IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KENNETH SIMPSON,

      **Plaintiff,**

v.

RUTH WINDINGS, CAPTAIN
ADKINS, PULASKI COUNTY, and
WARDEN SPURLOCK,

      **Defendants.**

Case No. 23-cv-3190-NJR

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, Chief Judge:**

Plaintiff Kenneth Simpson, a federal pretrial detainee currently detained at the Pulaski County Jail, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Simpson's Complaint, alleging First Amendment violations for the denial of his access to physical reading materials, was dismissed without prejudice for failure to state a claim (Doc. 15). He was granted leave to file an amended complaint.

On February 8, 2024, Simpson, along with another pretrial detainee named Gerardo Montes, filed an Amended Complaint regarding their access to physical reading materials (Doc. 16). Because Montes was not previously identified as a plaintiff in the original pleading, the Court directed Montes to advise the Court as to whether he wished to proceed as a joint plaintiff in this action (Doc. 20). Montes responded to the Court's Order and requested to be dismissed as a plaintiff in this case (Doc. 23). Montes's claims were dismissed, leaving only the claims raised by Kenneth Simpson (Doc. 24). Simpson's

Amended Complaint (Doc. 16) again alleges that his First Amendment rights were violated by the jail's decision to limit detainees to electronic reading materials.

The case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Amended Complaint

Simpson makes the following allegations:  Since May 2023, Simpson has been in federal custody at the Pulaski County Detention Center (Doc. 16, p. 1). In June or July 2023, all detainees received notice that the detention center planned to confiscate all physical reading materials and move to a tablet system whereby detainees could pay per minute to view materials on an electronic tablet (*Id*.). Inmates complained that the proposal, which would have charged detainees $0.05 per minute to view any type of electronic media, would prevent indigent detainees from accessing literature and other reading materials (*Id*.).

In response to the detainees' complaints, the detention center initially shelved the proposal, and detainees were allowed access to physical media so long as they were received from reputable sources (*Id*. at pp. 1-2). But then the detention center informed detainees that on August 28, 2023, all incoming mail to detainees would be scanned for digital viewing only. The detainees would not be allowed access to physical mail.

2

Detention center officials indicated that the new procedure was an attempt to prevent the introduction of drugs into the facility. Despite the change in procedures, Lieutenant Ruth Windings informed detainees that the proposed changes would not apply to books (*Id*. at p. 2).

In September 2023, Simpson purchased books that were shipped to him from outside the detention center. On September 14, 2023, Simpson submitted a request regarding the status of six books that had been shipped and received by the detention center (*Id*. at p. 2). He received a response indicating that the policy had changed, and he would not receive his books (*Id*.). Lieutenant Windings later informed Simpson that there were books on the tablets that he could read (*Id*.). Simpson filed a grievance because the books on the tablet were old, he did not have a tablet, and his books arrived at the facility before the policy changed (*Id*.). Simpson contends the tablets only have access to Project Gutenberg, a free website offering books from the public domain with no active copyright (*Id*. at p. 5). As such, the tablets only allow access to books that were published over 70 years ago (*Id*. at p. 2). Detainees are also unable to save their location when reading a book on the tablet (*Id*. at p. 5). Simpson alleges that the policy, implemented by Warden Spurlock and Captain Adkins, limits his access to reading materials (*Id*. at p. 6).

Simpson did not initially receive a response to his grievance and asked Windings about the status of his books (*Id*. at p. 2). She informed Simpson that his books were returned to the publisher. As a result of the policy change, Simpson alleges he was denied access to novels by Sam Sykes, Dean Koontz, Richard Kagney, and others (*Id*. at p. 6). After the policy change was made official in October 2023, Simpson alleges that guards

removed physical books, previously furnished by the detention center, from the housing units (*Id.* at p. 3). Detainees were informed that the books were being removed on the orders of Windings and Lieutenant Quinn (*Id.*). Because of the policy, detainees no longer have access to books purchased by their families, nor do they have access to a physical library. Indigent detainees have no access to a tablet and thus no access to reading materials (*Id.* at p. 7).

Sometime in October 2023, there was a fire in the unit; detainees were evacuated and then placed on lockdown (*Id.* at p. 3). All tablets were confiscated, prohibiting all detainees from accessing reading materials. During later lockdowns, detainees had access to their tablets but lacked access to charging stations (*Id.* at pp. 3-4). Thus, the detainees only had access to reading materials on the tablet for the life of the battery (*Id.*). Detainees complained about the policy, but Lieutenants Cripes and Windings told them to "handle it like they were in a real prison." Simpson believed the statement was an encouragement for the detainees to administer their own form of discipline on offending detainees in order to avoid lockdowns (*Id.* at p. 4). Cripes specifically stated that "sometimes people need to get their heads cracked" (*Id.*). Simpson and other detainees informed Captain Adkins and Warden Spurlock of these statements, but they failed to intervene (*Id.*).

## Preliminary Dismissals

Although Simpson refers to Lieutenant Cripes and Lieutenant Quinn, he fails to identify them as defendants in the case caption. To be considered a party, a defendant must be "specif[ied]…in the caption." *Myles v. United States*, 416 F.3d 551, 551 (7th Cir.

2005). Because Simpson fails to identify these individuals as defendants, any claim against them is considered **DISMISSED without prejudice**.

Simpson's Amended Complaint also refers to issues with access to religious items, but he fails to allege that he specifically was denied access to religious items or religious reading materials. He only alleges that Montes, who voluntarily dismissed his claims in this case, was deprived of his right to exercise his religion because he lacked access to the Catholic Bible, prayer materials, and other religious books and magazines (Doc. 16, p. 8). Although Montes previously alleged that the practice of his religion was improperly burdened in violation of the Religious Freedom and Restoration Act, 42 U.S.C. §§ 2000bb, *et seq.*, Simpson fails to allege that he was similarly denied religious materials. Because Montes is no longer a plaintiff to this case, any claim pursuant to RFRA is **DISMISSED without prejudice**.

<u>Discussion</u>

Based on the allegations in the Amended Complaint, the Court designates the following count:

> **Count 1:** **First Amendment claim against Pulaski County, Ruth Windings, Warden Spurlock, and Captain Adkins for denying Simpson access to physical reading materials.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be**

considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[1]

Encompassed in the First Amendment's freedom of speech is a freedom to read. *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 638 (7th Cir. 2005) (*Stanley v. Georgia*, 394 U.S. 557, 564 (1969)). Thus, "[a] prison's refusal to allow an inmate access to a book 'presents a substantial First Amendment issue. Freedom of speech is not merely freedom to speak; it is also freedom to read.'" *Munson v. Gaetz,* 673 F.3d 630, 633 (7th Cir. 2012) (*quoting King, 415 F.3d at 638).* "[T]he arbitrary denial of access to published materials violates an inmate's first amendment rights." *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (quoting *Martin v. Tyson*, 845 F.2d 1451, 1454 (7th Cir.) (per curiam), *cert. denied*, 488 U.S. 863 (1988)). Although inmates can be subjected to certain restrictions on their rights, those restrictions must be "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). *See also Lane v. Williams*, 689 F.3d 879, 884 (7th Cir. 2012) (applying *Turner* standards to civil detainees); *Koger v. Dart*, 114 F. Supp. 3d 572 (N.D. Ill. 2015).

At this stage, Simpson adequately alleges that there was a policy at the jail banning all physical forms of reading material. Simpson further alleges that the decision to ban physical reading materials was not related to a legitimate penological interest. He alleges that Pulaski County, Warden Spurlock, and Captain Adkins created and enacted the

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

policy eliminating physical books at the detention center. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690, 694 (1978). Simpson also adequately alleges that Lieutenant Windings implemented the policy and specifically denied Simpson access to physical books.

### Disposition

For the reasons stated above, Count 1 shall proceed against Pulaski County, Warden Spurlock, Captain Adkins, and Lieutenant Windings. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants Pulaski County, Warden Spurlock, Captain Adkins, and Lieutenant Windings: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Simpson. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Simpson, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the

address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Simpson, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Simpson is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  July 30, 2024**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

8

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, the defendants will enter an appearance and file Answers to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**